Miller *v.* Mulford.

---

ELIAS N. MILLER, assignee &c., appellant,

*v.*

DAVID MULFORD, assignee, respondent.

1. An assignee, under an assignment for the benefit of creditors, must, within the time limited by statute, except to any duly presented claim which he deems doubtful. The creditor's delay in producing proof of the justness of such claim, does not estop such creditor or his assignee in bankruptcy, from demanding its allowance, nor excuse the assignee's neglect.

2. *Held,* that such assignee might buy an interest of the purchaser of the debtor's real estate at a foreclosure sale under a mortgage thereon; but must account for the value of certain machines which, at the foreclosure sale, were sold as fixtures, although they were afterwards decided by the court to be personalty.

3. The assignee may, for the benefit of the estate, complete unfinished contracts of the debtor, provided he exercises a reasonable discretion.

---

On appeal from decree of Union orphans court.

*Mr. W. P. Wilson* and *Mr. W. C. Spencer,* for appellant.

*Mr. J. R. English,* for respondent.

THE ORDINARY.

The appellant, as assignee in bankruptcy of the late firm of Barton & Spencer, of the city of Elizabeth, caused the respondent to be cited to make his final account as assignee of John Y. Brokaw, under an assignment made under the act " to secure to creditors an equal and just division of the

estates of debtors who convey to assignees for the benefit of creditors." Barton & Spencer had duly put in, under Brokaw's assignment, a claim of $2,814.40 against his estate. The respondent filed his account, and the appellant excepted to it. The court, on hearing the exceptions, overruled them all. The only subject, however, which appears to have been particularly considered, was the question whether the appellant was not estopped from asserting his claim to a dividend of the estate by reason of the language and conduct of Mr. Spencer, of the firm of Barton & Spencer, in reference to the claim after it was put in. The court held that he was estopped, and, therefore, had no standing to litigate exceptions to the assignee's account. This conclusion, adverse to the appellant on the ground of estoppel, was erroneous.

The claim was, as before stated, duly filed. It showed the debits and credits of the account between the firm and Brokaw, and a balance in favor of the former. It appears that the assignee, after the claim was received, understood from Brokaw that the latter claimed that there was a balance due him from Barton & Spencer. The assignee, in reporting the claim, stated it at the amount of the balance, $2,814.40, claimed by Barton & Spencer, and, at the same time, stated that there was an offset in favor of Brokaw's estate of $2,894.40, which was the amount of credit, as claimed by Brokaw. Thus the credits, as claimed by Brokaw, were stated as an offset against the balance of the account of both debits and credits, as stated by Barton & Spencer.

There appear to have been threats on the part of the assignee to sue Barton & Spencer for the balance as it appeared on the assignee's statement, and promises on the part of Mr. Spencer to attend to the matter of the counterclaims. It does not appear that he ever admitted that the balance of the account was against his firm, and it appears, on the other hand, from Brokaw's testimony, that the latter never claimed that there was a balance in favor of his

estate.  The schedule to his assignment shows various items
of indebtedness to Barton & Spencer, amounting to about
$1,900 altogether, and he testifies that, when spoken to by
the assignee on the subject of the account, he referred him
to the accounts themselves; and, he adds, "I could not tell
how the claim was at that time."

Both the assignee and his attorney seem to have con-
cluded that there was no balance in favor of Barton &
Spencer, but, as before stated, Mr. Spencer never said so,
or made any admission to that effect.  Mr. Barton seems to
have taken no part in the matter.  The duty of the assignee,
however, under the statute, was plain.  The claim contained
the items of the whole account on both sides, and showed a
balance, as before stated, in favor of Barton & Spencer, of
$2,814.40, and it was sworn to by Mr. Spencer.  The
assignee, if he was not satisfied with the justness of the
claim, might have excepted to it, and it was his duty to do
so if Barton & Spencer insisted upon it and refused to with-
draw it.  The assignee could not safely assume that the
claim was groundless, from any delay in producing proof of
it satisfactory to him, or for want of satisfactory explanation.

It appears, by the testimony of the assignee, that when
he spoke to Mr. Spencer in regard to the condition of the
accounts and the claim that there was a balance due from
Barton & Spencer, to the estate of Brokaw, Mr. Spencer
promised to bring up his books and settle the matter; and
it appears, by the assignee's testimony, that at no time did
Mr. Spencer ever admit that the claim which his firm had
put in, was erroneous in any respect.  From the evidence,
it seems quite clear that the assignee misunderstood the
statements made by Brokaw in regard to the claim.  There
was a difference between Mr. Spencer and Mr. Brokaw as to
the amount of the credits to be given to the latter; Brokaw
insisting that the amount was more, by about $100, than
Spencer was willing to allow.  The assignee seems to have
concluded that this additional credit thus claimed by Bro-
kaw, was a balance claimed by him upon the whole account,

43

whereas it appears, by the schedule to his assignment before referred to, and by his testimony, that such was not the understanding of Brokaw, and that he did not so insist. The assignee having failed to except, according to law, to the claim, is bound by it.

Of the various exceptions to the account, it is important to notice but a few. It is objected that the assignee became the owner, in partnership with Mr. Blancke and Mr. English, of the principal real estate of the debtor. It appears, however, that the purchase was not made at his own sale, but at the sale of the property under a decree of foreclosure of this court, and that he procured a purchaser at that sale, in order to save the property from sacrifice, and subsequently induced the purchaser to sell him an interest in the property. His conduct in the matter was not only not objectionable, but was praiseworthy. He appears to have been actuated by an anxiety to save the property from sacrifice, and by no other consideration. Under such circumstances, he cannot be regarded as having purchased the property in trust, or as trustee. *Earl* v. *Halsey, 1 McCart. 332.*

It is objected, that there were sold with that property certain machines, as part of the real estate, which, in point of fact, were not parcel of the realty. The assignee consulted distinguished counsel on the subject, before the sheriff's sale took place, and was advised that all the machinery which was attached by belting, as well as that which was attached to the building otherwise, was part of the realty. Subsequently, by a decision in respect to part of this very property (*Blancke* v. *Rogers, 11 C. E. Gr. 563*), it was held that some of the machines were not so attached to the realty as to become part of it. It was the duty of the assignee to sell the machines, which were personal property. It appears that they have come into his hands under the foreclosure sale. He is bound to account for them.

Objection is also made that the assignee, without the order of the court, proceeded to complete certain contracts which had been made by the debtor, and which were unfin-

ished at the time of making the assignment. He was
at liberty, and it was his duty, to do so, under the circum-
stances. Where it is manifestly for the benefit and advan-
tage of the creditors and those interested in the estate,
the assignee may carry on the business and work up the
material on hand which otherwise would be, to a degree
at least, unavailable to the estate. *Burrill on Assignments*
*444.* Of course he is bound to the exercise of a sound
discretion. The assignee testifies that he acted in the mat-
ter under the direction of the creditors. Opportunity was
given, in taking testimony by the exceptants in the orphans
court, to inquire into all the particulars in regard to the
exercise of discretion on the part of the assignee in this
case. He appears to have acted fairly and with due regard
to the interest of the estate. Indeed, it appears that, in his
desire to advance the interest of the estate, he has already
expended about $3,000 more than he has received or will
receive.

The decree of the orphans court will be reversed, with
costs.